IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LARISSA ANN BEACH § | |
| § | |
| V. § | |
| § | A-11-CA-968 SS |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE SAM SPARKS
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 1); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 14); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 15). Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. General Background**

Larissa Ann Beach filed an application for Social Security Disability (SSD) on May 12, 2009, alleging disability with an onset date of June 15, 2007. Tr. 28. After her claim was initially denied on September 15, 2009 and again on reconsideration on February 1, 2010, Beach requested an administrative hearing. *Id.* A hearing was held before administrative law judge (ALJ) Dan Dane

on June 23, 2010, and Jerry L. Taylor testified as a vocational expert (VE).  *Id.*  On July 23, 2010, the ALJ issued an unfavorable decision and found Beach not disabled.  *Id.*  Beach requested review by the appeals council, which was denied by routine notice on September 15, 2011.  *Id.*  Beach has exhausted her administrative remedies and now seeks judicial review of the administrative proceedings under 42 U.S.C. § 405(g).  She presents four issues for review: (1) the Administrative Law Judge (ALJ) failed to follow the treating physician rule; (2) the ALJ failed to properly evaluate Beach's credibility; (3) the ALJ relied upon flawed vocational expert testimony; and (4) the ALJ did not properly consider the VA disability determination.

## II. Administrative Law Judge's Findings

The ALJ went through the five-step sequential evaluation process to determine whether Beach was disabled.  Tr. 29.  At the first step, he determined that Beach had not engaged in substantial gainful activity since her alleged onset date of disability, June 15, 2007.  Tr. 30.  At the second step, the ALJ found that Beach suffered from three severe impairments: knee pain status post arthroscopic surgeries of both knees, a history of headaches, and bipolar disorder and depression.  *Id.*  At the third step, he found that Beach did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so he proceeded to determine her residual functional capacity (RFC).  *Id.*

First, the ALJ listed Beach's physical limitations.  The ALJ determined that she retains the functional capacity to lift or carry no more than ten pounds frequently and 20 pounds occasionally, and can stand or walk no more than 2 hours during a normal 8-hour workday.  Tr. 40.  The ALJ further determined that Beach retains the capacity to sit for six to eight hours during a normal 8-hour day, but with occasional headaches.  *Id*.  The ALJ also identified Beach's mental limitations: she

suffers from nonexertional limitations associated with her bipolar disorder and depression and, although she has some marked limitations in carrying out detailed instructions, she is capable of making appropriate decisions about personal, work, and social situations while performing job duties. *Id.*

In support of his conclusion, the ALJ discussed the evidence he used to determine Beach's RFC before determining whether she could perform her past work. Beach, who served in the Air Force from November 26, 1996 to July 9, 1997, injured both knees at the same time while in basic training at Lackland Air Force Base. She then underwent bilateral arthroscopic surgeries on her knees for torn cartilage. Despite Beach's report that her knee pain did not improve as a result of the surgery, her X-ray results from February 2005 came back negative on both knees. Additionally, Beach reported to her treating physician in August of 2008 that she used a treadmill three times a week for approximately 30 minutes each time, supporting the ALJ's finding that she retained the capacity to walk or stand for up to two hours per day. *Id.* at 33.

Beach also reported suffering from recurrent severe headaches as well as a number of mental impairments, including bipolar disorder, post-traumatic stress disorder, depression, intermittent explosive disorder, and MST (multiple significant trauma). Tr. 32. As a result, Beach sought frequent treatment at various VA medical facilities and received varying diagnoses from several different doctors. Tr. 31-39. In May of 2006, Beach was evaluated at the Dallas VA medical facility, where she was diagnosed with chondromalacia, recurrent migraine headaches, bilateral temporomandibular joint syndrome, anxiety, and panic attacks. Tr. 32. In February of 2008, Beach was evaluated again at the Dallas VA medical facility, where the examining physician reported medical noncompliance, documented by a subtherapeutic medication level because Beach had only

been taking half of her prescribed dosage of depression medication. In September of 2008, Beach underwent a psychiatric evaluation at the Big Springs, Texas VA medical facility, which led to diagnoses of post traumatic stress disorder, recurrent severe depression, and a GAF score of 55, indicating moderate symptoms. *Id.* In February of 2009, Beach underwent a psychological examination with Dr. Jackie Scheff, who reported that Beach appeared "combative, restless, and tense, with pressured speech focusing mostly on [her] need for various types of medication." Tr. 35. Significantly, Dr. Scheff reported that Beach's affect was inconsistent with that of someone with major depressive disorder, and that Beach appeared to be invested in convincing her that she was experiencing extreme distress with her headaches. *Id.* As a result, Dr. Scheff noted that Beach's behavior strongly invoked suspicions of malingering. *Id.* Dr. Scheff also reported medical non-compliance with Beach's pain medications, noting that she did not refill her prescription for Hydrocodone and she cancelled her subsequent psychiatric and psychological testing appointments. Tr. 35-36. Lastly, in response to Beach's reports that she was unable to work, Dr. Scheff reported that Beach appeared capable and able to engage in employment, though she may indeed be physically and psychologically incapacitated when experiencing symptoms related to migraine headaches. *Id.*

Beach underwent another psychological examination in March of 2009, where she was diagnosed with chronic headaches presenting moderate problems doing chores, shopping, exercising, traveling, sports, recreation and severe problems driving. Tr. 37. The examining physician, Dr. Charles Cole, opined that Beach would be unable to secure or follow a substantially gainful occupation as a result of her headaches, but she could easily secure employment if the headaches could be controlled. *Id.* In order to update Beach's medical records for the ALJ hearing, Beach was scheduled for consultative examination on January 4, 2010, where she was examined by SSA

Consultative Psychologist, Barbara Brucken. Tr. 38. Dr. Brucken reported a diagnosis of recurrent severe depression with no psychosis and a GAF score of 50. *Id.* She further noted that Beach had adequate social skills, demonstrated appropriate behavior in completing tasks on time, and demonstrated no problems with concentration, judgment, or insight. *Id.* Lastly, the day prior to Beach's hearing, the ALJ received an impairment questionnaire dated June 9, 2010, in which VA psychiatrist Dr. Lalitha Rao opined that Beach was disabled and was completely precluded from performing any significant gainful activity. *Id.*

In reviewing this objective medical evidence, the ALJ found that the record contained no objective signs of an incapacitating impairment and that Beach was not so severely impaired as to preclude the performance of all work activities. Tr. 41. In doing so, the ALJ rejected Dr. Rao's medical opinion that Beach was disabled, finding that the opinion was not supported by the objective medical evidence, and that the opinion was prepared merely for the purpose of supporting Beach's disability claim rather than for legitimate treatment purposes. *Id.* The ALJ also noted that, despite her claims of an incapacity to perform any work activity, Beach engages in a number of daily activities, including managing her household, caring for her teenage and pre-school daughters, driving by herself, and socializing with family. Furthermore, the ALJ noted that Beach was able to obtain a degree from Texas Women's University while performing work activity at the level to constitute substantial gainful work activity. *Id.* The ALJ also found that the record documents no memory problems, and fails to support Beach's allegations of incapacitating intractable pain. *Id.* In regards to Beach's subjective complaints, the ALJ found that Beach's medical noncompliance impugned her credibility, noting that she would not have continued to reject her treatment regimen if she were truly as limited as she alleged. *Id.* Accordingly, the ALJ found that, while the claimant's subjective

testimony indicated that she was incapable of performing any type of work, the evidence in its entirety, including the objective medical evidence, did not support the conclusion that Beach is incapable of performing any level of sustained work activity. *Id.*

The ALJ proceeded to determine that Beach is capable of performing her past relevant work as a telephone answering service operator and general office clerk. *Id.* at 42. The vocational expert (VE) testified that the job duties of a telephone answering service are sedentary and semi-skilled, while the job duties of general office clerk are semi-skilled and light in exertional level. *Id.* The ALJ found that Beach had worked in each of these positions long enough to master the basic tasks and duties and, therefore, these jobs constitute her past relevant work. *Id.* The ALJ further found that Beach retained the functional capacity to perform her past relevant work for a sustained period of time, such as a normal 40-hour workweek, for an indefinite period of time. *Id.* Accordingly, the ALJ determined that Beach was "not disabled." *Id.*

### III.  Analysis

**A.  Administrative Definitions and Standards**

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

    3.      a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

    4.      a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

    5.      if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

**B.     Standard of Review**

    Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the

claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). Applying these standards, the Court will now consider Davenport's points of error.

**C.      Beach claims that the ALJ failed to follow the treating physician rule**

First, Beach alleges that the ALJ improperly declined to accord controlling weight to Dr. Rao's medical opinion regarding Beach's psychological impairments. On June 9, 2010, Dr. Rao completed an impairment questionnaire for Beach, indicating that Beach was disabled based on diagnoses of mixed bipolar disorder, trichotilomania, a history of post traumatic stress disorder, and a GAF score indicating serious symptoms. Tr. 38. The ALJ received this questionnaire on June 22, 2010, the day before Beach's first disability hearing. *Id.* Dr. Rao indicated on the questionnaire that she had first treated Beach in 1998, and had continued to treat her monthly with counseling sessions every two weeks. *Id.* at 487. Beach, however, testified that her session with Dr. Rao on June 9, 2010, was the first time that she had been treated by Dr. Rao, though she still identified her as the 'head psychiatrist.' Tr. 52. She further testified that she was rarely ever treated by the same psychiatrist at the VA because of the high turnover rate of doctors at the facility. *Id.* The ALJ found that Dr. Rao's opinion in the questionnaire was not supported by objective clinical findings, and that the questionnaire was prepared solely for submission at the hearing rather than for genuine treatment

8

purposes. Tr. 39. Accordingly, the ALJ found that Dr. Rao's opinion was not entitled to controlling weight under the treating physician rule. *Id.*

Under 20 C.F.R. §404.1527(c)(2), a treating source's opinion on the nature and severity of a claimant's impairments is given controlling weight if the Commissioner finds the opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the claimant's case record. 20 C.F.R. §404.1527(c)(2). A treating source is a claimant's "own physician, psychologist, or other acceptable medical source who provides [her], or has provided [her] with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship* with [her]." 20 C.F.R. §404.1502 (emphasis added). An acceptable medical source will not, however, be considered a treating source if the claimant's relationship with the source is based solely on her need to obtain a report in support of a disability claim rather than for legitimate treatment purposes. 20 C.F.R. §404.1502.

Despite Beach's testimony that Dr. Rao did not treat her on an ongoing basis, Beach claims that the ALJ should have nonetheless afforded controlling weight to Dr. Rao's medical opinion as a treating physician because Dr. Rao was part of Beach's VAMC treatment team. In support of this contention, Beach cites decisions from the Eighth and Ninth Circuits holding that opinions from doctors who are part of a treatment team providing ongoing care to a patient are still entitled to treating physician status regardless of the length of treatment. (Clerk's Doc. No. 14 at 10); *See Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1037-39 (9th Cir. 2003). The Fifth Circuit, however, has not yet adopted this position and, even if it were to do so, there is no evidence in the record to support the notion that Dr. Rao was part of a treatment team that had provided ongoing care to Beach. Although Dr. Rao indicated in the

9

questionnaire that she had been treating Beach regularly since 1998, Beach reported seeing Dr. Rao for the first time on June 9, 2010, just two weeks before her first hearing with the ALJ. Tr. 38. She further testified that she sees a different psychiatrist at the VA every six months due to the high turnover rate of physicians at the facility, indicating that Dr. Rao was not part of any specific treatment team. Tr. 52. Additionally, Dr. Rao indicated in the questionnaire that she had prescribed four medications to Beach, though two of the listed medications were absent from the medication listing submitted to the ALJ by Beach's attorney and the other two medications were listed as being prescribed by another physician. Tr. 39. This further corroborates the evidence that Dr. Rao was not part of an ongoing treatment team, but rather supports the ALJ's finding that Dr. Rao's relationship with Beach was solely for the purpose of providing support for Beach's disability claim. Therefore, the ALJ did not err in declining to accord controlling weight to Dr. Rao's medical opinion because the evidence in the record does not support a finding that Dr. Rao qualifies as a treating source under 20 C.F.R. 404.1502.

Beach further contends that the ALJ erred in finding that Dr. Rao's medical opinions were not based on objective clinical findings. She asserts that Dr. Rao based her opinion that Beach is disabled on objective findings of a number of symptoms, including primary symptoms of fatigue, guilt, explosive angry outbursts, socialization skills, impaired judgment, and sleep disturbance. Tr. 489. Under 20 C.F.R. §404.1527(c)(2), a treating source's opinion is to be given controlling weight if the Commissioner finds the opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(c)(2). However, the record does not support a finding that Dr. Rao's opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques. To the

contrary, Dr. Rao did not even provide an answer to question number six of the impairment questionnaire, which reads "identify the laboratory and diagnostic tests results which demonstrate and/or which support your diagnosis." Tr. 488.  Dr. Rao's failure to provide any response regarding the laboratory and diagnostic test results on which she based her medical opinion supports the ALJ's finding that Dr. Rao's opinion is not well-supported by objective clinical findings.  Accordingly, the ALJ did not err declining to give controlling weight to Dr. Rao's medical opinion under the treating physician rule.

In the alternative, Beach argues that even if the ALJ was not required to give controlling weight to Dr. Rao's medical opinion as a treating physician, he still failed to weigh Dr. Rao's opinion under the factors set forth in 20 C.F.R. §404.1527(d)(2)-(6).[1]  Beach contends that Dr. Rao's opinion was not contradicted by the opinions of any other treating or examining physician and, therefore,  the ALJ was required to evaluate Dr. Rao's opinion under the aforementioned factors before rejecting her opinion altogether.  The Fifth Circuit has previously held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

While Beach asserts that the ALJ did not properly analyze Dr. Rao's opinion using the factors set out in 20 C.F.R. §404.1527(d)(2)-(6), the ALJ specifically discussed his findings under each of

---

[1]Plaintiff's cites to the previous version of 20 C.F.R. §404.1527, effective through March 25, 2012. Under the current version of this regulation, the relevant provisions are 20 C.F.R. §404.1527(c)(2)-(6).  Any further reference made to provisions (d)(2)-(6) will be understood to be in reference to 20 C.F.R. §404.1527(c)(2)-(6).

11

the factors before rejecting Dr. Rao's opinion. Tr. 39. First, the ALJ discussed the treatment relationship between Beach and Dr. Rao. In doing so, he found that Dr. Rao's opinions did not merit controlling weight because Dr. Rao did not qualify as a treating source, and her opinions were not well-supported by medically acceptable clinical and laboratory diagnostics. *Id.* In making this determination, the ALJ addressed both the length and the nature of the treatment relationship, noting that Beach had only been treated by Dr. Rao on one occasion, just prior to her first disability hearing with the ALJ. *Id.* These factors led the ALJ to determine that Dr. Rao's treatment relationship with Beach was solely for the purpose of supporting Beach's disability claim and, accordingly, Dr. Rao's opinion should be given little weight. *Id.* The ALJ also discussed the supportability of Dr. Rao's opinion, finding that her medical opinion was not well-supported by objective clinical findings as required by the Social Security Administration. *Id.* The ALJ then addressed the consistency of Dr. Rao's opinion with the record as a whole, finding that Dr. Rao's subjective medical opinion was inconsistent with objective records. *Id.* While the ALJ did not discuss the factor of specialization in depth, the fact that the Dr. Rao is a psychiatrist and, thus, specializes in the field to which her opinion relates, is not enough to overcome the totality of the evidence weighing against her opinion. Therefore, the ALJ properly analyzed Dr. Rao's medical opinion under the factors listed in 20 C.F.R. 404.1527(d)(2)-(6). Accordingly, the ALJ did not err in declining to follow Dr. Rao's opinion that Beach was disabled.

**D.    Beach asserts that the ALJ failed to properly evaluate her credibility**

Beach further contends that the ALJ improperly evaluated her credibility when considering her subjective statements about the intensity and severity of her symptoms. In evaluating a claimant's symptoms, subjective statements of pain must be reasonably consistent with the objective record in

order to be found credible. *Adams v. Bowen*, 833 F.2d 509 (5th Cir. 1987). After evaluating Beach's symptoms under the two-step evaluation process set forth in 20 C.F.R. 404.1529, the ALJ found that Beach's underlying medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Beach's subjective statements regarding the intensity and frequency of the symptoms were not credible and were not adequately supported by the evidence in the record. Tr. at 41. Beach, however, contends that the ALJ's findings misrepresent the record, and that her subjective statements are supported by the objective medical evidence in the record. Specifically, she argues that the ALJ failed to consider her testimony regarding her symptoms, limitations, daily activities, and lack of improvement with treatment as required by 20 C.F.R. §404.1529, and that he failed to give any other sufficient reason for finding plaintiff not credible. However, this is simply not the case. The ALJ discussed his reasoning at length, particularly noting that Beach's medical noncompliance and inconsistent testimony impugned her credibility in regards to her subjective statements. Tr. at 41. The ALJ further noted a number of activities that the claimant engages in on a daily basis that undermine her subjective testimony that she is entirely precluded from engaging in sustained work activity, including: managing her household, caring for her teenage and pre-school aged daughters, driving by herself, socializing with her family and siblings, managing her personal needs, and obtaining a degree from Texas Women's University during the alleged disability period. *Id.* The ALJ further noted that the record shows no indication of memory problems, and one examiner reported that Beach retains the ability to complete tasks in a timely manner and is capable of making decisions about work, personal, and social situations. *Id.*

While Beach contends that her testimony regarding her symptoms is supported by the objective medical evidence in the record, she cites primarily to Dr. Rao's testimony in support of this

contention. As previously noted, the ALJ did not accept Dr. Rao's testimony as controlling for legally sufficient reasons. Accordingly, the evidence submitted by Dr. Rao is not sufficient to support a finding that the objective medical evidence corroborates Beach's subjective statements about her symptoms. Lastly, the ALJ noted that the record contains no objective signs of an incapacitating impairment such as muscle atrophy or grossly abnormal neurological deficits that would support Beach's testimony that she is so impaired as to preclude her from performing all work activities. *Id.* Because the ALJ may discount Plaintiff's subjective statements of pain when they are contradicted by the other objective evidence, this argument is rejected. *See Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992).

**E.     Beach claims that the ALJ relied upon flawed vocational expert testimony**

Next, Beach contends that the ALJ relied upon flawed vocational expert testimony in determining that she could perform her past relevant work as a telephone answering service operator and general office clerk. Specifically, she argues that while the hypothetical relied upon by the ALJ technically incorporated all the limitations recognized by the ALJ, it failed to incorporate all the limitations borne out by the record. (Clerk's Doc. No. 14 at 16). The Fifth Circuit has held that:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (inclduing additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question) a determination of non-disability based on such a defective question cannot stand.

*Bowling,* 36 F.3d at 436 (emphasis added). In *Bowling*, the Fifth Circuit found that there was reversible error because the ALJ presented a hypothetical question to the VE that stated that the claimant could occasionally lift and carry 50 pounds when the record actually stated that the claimant

could occasionally lift and carry only 20 pounds. 36 F.3d at 436. As a result, the court found that there was no record support for the presented hypothetical question and that the question did not reasonably incorporate the claimant's impairments. *Id.*

In the instant case, the ALJ asked the VE to assume a hypothetical person of the complainant's age, education, work history, disability, and functional capacity as recognized by the ALJ. In doing so, the ALJ phrased the hypothetical so as to incorporate verbatim the limitations as they are noted by the ALJ in the record. Tr. 63. When asked if such hypothetical person could perform any of the work that Beach had performed in the past, the VE testified that a the person described in the hypothetical could perform Beach's past relevant work of telephone answering service operator and general office clerk. Tr. 64. Following this testimony, Beach's attorney was given the opportunity to question the VE and correct any deficiencies in the hypothetical posed by the ALJ, at which point Beach's attorney questioned the VE about the various moderate limitations listed in Dr. Cox's Mental Residual Functional Capacity Assessment of Beach and the severe limitations indicated by Dr. Rao in the impairment questionnaire. Tr. 64-66. Following the standard set forth in *Bowling*, the hypothetical presented to the VE reasonably incorporated all of Beach's disabilities as recognized by the ALJ, and Beach's attorney was given the opportunity to cross-examine the VE and correct any deficiencies in the hypothetical. Accordingly, the ALJ did not rely on flawed vocational expert testimony in determining that Beach retained the ability to perform her past relevant work, and the hypothetical posed by the ALJ to VE provides no grounds for reversible error.

**F.     Beach asserts that the ALJ did not properly weigh the VA's disability determination**

Lastly, Beach asserts that the ALJ committed reversible error in failing to properly consider the VA's determination that Beach was completely unemployable due to disability. Given that the

rules for determining disability differ between governmental agencies, a determination made by another agency that a claimant is disabled is not binding on the Social Security Administration. 20 C.F.R. 404.1504. While Beach concedes that the ALJ is not bound by the disability determination made by the VA, she contends that the ALJ is still required to give the decision due consideration when making his own determination of disability. (Clerk's Doc. No. 14 at 18). In support of this contention, Beach cites to Fifth Circuit precedent noting that "since the regulations for disability status differ between SSA and the VA, ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). In *Chambliss*, the court found no reversible error for failure to give a VA disability determination "great weight" because the ALJ provided adequate reasons for doing so, citing that the VA disability determination was made only a year after the claimant's heart surgery, the treating physician's opinion that the claimant could not work was conclusory in nature, and the treating physician's opinion was made as part of an application for food stamps. *Id.* at 523.

In this case, Beach argues that the ALJ simply discarded the VA disability determination and provided no indication as to why he gave the determination such little weight. While the ALJ does not explicitly cite his reasons for rejecting the VA disability determination, other than noting that the rules differ and he is not bound by the decision, his relevant discussion of the VA's findings in other portions of the decision provide an adequate explanation. First, in rejecting Dr. Rao's (a VA psychiatrist) medical opinion that Beach is unemployable due to disability, the ALJ noted that Dr. Rao's opinion was not supported by objective medical evidence as required by the Social Security Administration, specifically noting that the definition of disability under Social Security law requires an inability to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment that must be shown to exist by reason of symptoms, signs, or laboratory findings. Tr. 39. Because the ALJ found that Dr. Rao's opinion was not supported but the necessary clinical findings and was prepared solely for the purposes of the disability hearing, he appropriately disregarded her opinion that Beach was disabled. *Id.* Furthermore, in discussing Dr. Cole's (a VAMC physician) finding that Beach would be unable to secure or follow substantially gainful work activity as a result of her headaches, the ALJ emphasized Dr. Cole's opinion that, if Beach's headaches could be controlled through treatment, she could easily secure employment. Tr. 37. The ALJ then went on to note that the record documents a history of medical noncompliance by Beach, who refused physical therapy and continued to nullify her treatment regimen. Tr. 38-41. Additionally, in discussing Dr. Scheff's (a VAMC Clinical Psychologist) evaluation of Beach, the ALJ emphasized reports that Beach did not refill her prescription for Hydrocodone, she cancelled a scheduled psychiatric appointment, she was resistant to the idea of psychotherapy, and she was noted as a possible malingerer. Tr. 36. Accordingly, the ALJ determined that, based on the objective medical evidence in the record as provided by the VA and other examining physicians, Beach did not meet the definition of disabled as is it is defined under Social Security Law, even though she was determined to be disabled by the VA. Tr. 41-42. Therefore, the ALJ provided adequate reasoning for according the VA disability determination little weight in his relevant discussion of each VAMC medical examiner's findings. Consequently, the ALJ did not fail to properly consider the VA's disability determination.

## IV. Recommendation

The undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

### V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–153 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 26 day of October, 2012.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE